## In re Treasure Chest Amusement Device

*Patrick T. Kiniry* and *James A. Nelson, Assistant District Attorneys*, for Commonwealth.
*Robert Davis Gleason*, for defendant.

CREANY, *J.*, September 22, 1978—This is an in rem proceeding in which the Commonwealth seeks to destroy two machines, identified as "Treasure Chest Amusement Device"; the machines were confiscated in the Borough of Nanty Glo, Cambria County, Pa.

The machines were set up as part of the carnival units at the Nanty Glo Firemen's fairground area. This occurred on June 28, 1977; the machines were

observed in play, and were played by members of the Pennsylvania State Police; the machines were confiscated, and the owner of the machines, William Swank, and Miss Jean Ann Esseny, the person in charge at the time of the arrest, were charged with the violation of the gambling laws of the Commonwealth of Pennsylvania, specifically section 5513 of the Pennsylvania Crimes Code of December 6, 1972, P.L. 1482, 18 C.P.S.A.

Section 5513(a) provides as follows:

"(a) *Offense defined.*—A person is guilty of a misdemeanor of the first degree if he:

"(1) intentionally or knowingly makes, assembles, sets up, maintains, sells, lends, leases, gives away, or offers for sale, loan, lease or gift, any punch board, drawing card, slot machine or any device to be used for gambling purposes, except playing cards;

"(2) allows persons to collect and assemble for the purpose of unlawful gambling at any place under his control;

"(3) solicits or invites any person to visit any unlawful gambling place for the purpose of gambling; or

"(4) being the owner, tenant, lessee or occupant of any premises, knowingly permits or suffers the same, or any part thereof, to be used for the purpose of unlawful gambling.

"(b) *Confiscation of gambling devices.*—Any gambling device possessed or used in violation of the provisions of subsection (a) of this section shall be seized and forfeited to the Commonwealth. All provisions of law relating to the seizure, summary

and judicial forfeiture, and condemnation of intoxicating liquor shall apply to seizures and forfeitures under the provisions of this section."

The Commonwealth having confiscated the machines, now seeks to destroy the same on the theory they are gambling or gaming devices to be used for gambling purposes, and are therefore subject to confiscation and destruction, as provided for by the Crimes Code.

Defendant-owner alleges that the machines were not gambling devices as defined in the Crimes Code and the confiscation was illegal, the machines should be returned to him and not destroyed.

## DISCUSSION

The Commonwealth has the burden of proving that the machines were in fact gambling devices, so as to render their setting up and use illegal and to make them subject to confiscation and destruction.

A gambling device per se is one which cannot be reasonably used for any lawful purpose, such as amusement, so we must initially distinguish between, (1) devices which are capable of use for gambling purposes (a deck of cards), and (2) those whose very characteristics, even though there may not be proof of actual gambling, would stamp it as a gambling device per se, i.e. one which was intended for that use only.

Although the Commonwealth has the burden of proving that the machines are gambling devices per se, this being an action in rem, the Commonwealth is not held to the same degree of proof required in a criminal trial: Pannula v. Rosenberg, 171 Pa. Superior Ct. 233, 90 A. 2d 267 (1952).

In determining whether a machine is a gambling device per se, the cases have supplied us with certain guidelines.

A careful reading of these cases indicates that three elements must be proved to establish the "gambling" aspect of a machine; they are:

1. Consideration, i.e. the coin or thing of value used to activate the play;

2. Reward, i.e. this element relates to the return to the player of a thing of value;

3. Chance, i.e. whether the player can, by his skill, increase his likelihood of a reward, or is the reward contingent solely on pure chance.

Considerable testimony was accepted by the court at the hearing of this case; this included exhibits, consisting of photos of the machine, detailed sketch or diagram of the machine, and expert testimony of the State police officer, qualified as an expert—together with his detailed explanation of play, including tests made, confiscation of the machines—and also a detailed explanation of the play in the presence of the court, at the time of hearing.

The question presented to this court, rather strongly by both sides, is whether the quantum of evidence offered is sufficient to satisfy the Commonwealth's burden of proof. This being an in rem proceeding, a civil case, the Commonwealth meets its burden of proof if it satisfies the court of its position by a preponderance of the evidence; this the Commonwealth has done.

The testimony in this case was quite extensive and very thorough in explaining to the court the operation of the machines.

The testimony consisted of State police officers Michael Deise and Thomas E. Dominski, who testified that they attended the carnival in Nanty Glo on June 28, 1977, observed the operation and play of the machines for about 20 minutes and then played the machines for about one-half hour.

The object of the play was to insert a quarter in a "shooter" (a slotted handle) which would allow the quarter to fall on a flat surface in an area on the encased table, in front of an oscillating brush which in turn would push the quarter against other quarters towards a slot (pay-off)—which if successful would return to the player as "winnings."

In addition to quarters on the playing surface, there were a few blue colored tokens placed on the quarters or on the surface, the object being that in addition to any returned coins as a pay-off, if a player received one of the tokens, the player was entitled to receive as an additional bonus a "teddy bear" having a monetary value of $1.65.

The officers placed $5 into the machine and their return or pay-off was 75 cents.

Lieutenant Matthew Hunt, a member of the Pennsylvania State Police for 20 and 1/2 years, was called as a Commonwealth witness. The lieutenant was qualified as an expert in the field of gambling devices (N.T. pp. 30 thru 100); and gave a comprehensive description of the machines, their construction, their play, the effect of placement of the "shooter" in various positions, the skill or lack of skill necessary to operate the machines. Very clearly, the lieutenant established that the Commonwealth had, by a preponderance of the evidence, proven that all three of the elements necessary to find the machines to be a gambling device were satisfied.

"Q. This morning you also informed us that the procedure that you go through analyzing the machine as to whether or not it is a gambling device, is to look at the three elements of consideration, reward and chance, is that correct?

"A. That is correct.

"Q. Would you please inform the Court what operation you did with regard to these three elements of the law?

"A. In regard to the element of consideration, I placed a quarter in the coin chute that was referred to by Mr. Gleason as the shooter, and the machine took the quarter into the playing area of the machine. So therefore in effect the consideration present criteria was met by the machine taking the quarter.

"The coin then lands on a flat playing surface where other quarters are already deposited, and then there is an oscillating brush which oscillates back and forth, which either hits the quarter or pushes it or does not push it. Now that is the chance part. You take a chance when you insert the quarter as to where the oscillating brush is going to push the quarter if it does at all.

"The third element, the element of reward, is whether or not you receive what we call a pay-off, by virtue of a quarter being knocked off the edge of the flat playing surface into a run-out chute which goes immediately back to the patron."

Taking all the evidence presented, which constituted approximately 100 pages, together with the detailed demonstration in the presence of the court, the court finds the machines to be gambling devices per se, subject to confiscation and destruction as prayed for by the Commonwealth's petition.

## FINDINGS OF FACT

1. The devices were set up at a carnival at Nanty Glo, Cambria County, Pa.

2. The devices consisted of two show case type of equipment with a flat surface, approximately 10 feet in length.

3. The devices, named "Treasure Chest," had eight playing slots on each side of the playing surface accommodating eight players.

4. The shooter (the slot accepting the 25 cent coin) was designed so as to drop the coin on the flat surface some time prior to an oscillating brush sweeping the 25 cent coin toward the drop-off or pay-off slot.

5. Prior to reaching the pay-off slot, there are three hazards impeding the player's pay-off: (1) an elevated edge before the drop-off which travelled the width of the playing surface; (2) there are two hidden openings (one on each side of the playing surface) designed to accept coins into a "chute" prior to the drop-off (or pay-off) slot; the purpose was to return these to the "house" or owner. The coins fell into a separate hidden plastic container underneath the surface of the machine.

6. Painted tokens, the size of a quarter, were interspersed among the coins on the surface; if a colored token was returned to the player he was entitled to a teddy bear (prize) having a value of $1.65.

7. The machines were set up for operation for the court's view; the set-up was in the same general manner as they were the night of their confiscation.

8. Except for the music provided by a stereo-music set-up, conditions of play were the same.

9. The machines were operated by Lieutenant

Hunt, a gambling device expert; demonstration established (a) that no skill was involved in the operation of the shooter, (b) any reward was minimal, and (c) the coin placed in the shooter was consideration.

10. There was an absolute lack of any amusement element or feature.

## CONCLUSIONS OF LAW

1. The court had jurisdiction over the subject matter by virtue of the authority of section 5513 of the Pennsylvania Crimes Code.

2. The State police officers acted within the scope of their duties as police officers, in confiscating the machines.

3. This proceeding being one in rem, the Commonwealth was required to prove the devices to be gambling devices per se, by a preponderance of the evidence.

4. The testimony and evidence by way of demonstration proved the elements to declare a device a gambling device per se, i.e. (1) consideration; (2) reward; and (3) chance. There was lacking the element of amusement.

5. The "Treasure Chest" is a gambling device per se.

6. The "Treasure Chest" is a proper subject for destruction.

Accordingly, the court enters the following order:

## ORDER

And now, September 22, 1978, after hearing, submission of briefs, a review of all the evidence, it is ordered and directed:

1. That the two machines, identified as "Treasure Chest," presently in the possession of the Pennsylvania State Police, Ebensburg, Pa., be and the same are ordered destroyed, the court having determined the same to be gambling devices per se.

2. The trailer and van, as well as the stereo system previously released to William Swank, are hereby confirmed to be the property of William Swank.

3. The sum of $1,396.70 in cash confiscated with the machines on June 29, 1977, is directed to be paid into the Cambria County Treasurer's Office, and to be subject to use by Cambria County.

4. The destruction of the said machines is to take place, after notice to the owner, and in accordance with the Crimes Code as provided in these matters.